AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Fernando ESPINO-Ortiz and Perla Janeth RUIZ-Lozano | ) ) ) ) ) | Case No.  **24mj1398** |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  September 25, 2024  in the county of  Bernalillo  in the
_____ District of  New Mexico , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) | Illegal Possession of a Machinegun |
| 18 U.S.C § 933(a) | Firearms Trafficking and Conspiracy to Traffic Firearms |
| 26 U.S.C. §§ 5841, 5845, 5861 | Receipt and Possession of an Unregistered Destructive Device |
| 18 U.S.C. § 2 | Aiding and Abetting |

This criminal complaint is based on these facts:

Please see the attached affidavit of ATF Special Agent Allison Garcia, which is incorporated by reference and has been reviewed by AUSA Lou Mattei.

☑ Continued on the attached sheet.

*Allison garcia*
Complainant's signature

Allison Garcia, ATF Special Agent
*Printed name and title*

Telephonically sworn and electronically signed.

*B Paul Briones*

Date:  September 25, 2024
Judge's signature

City and state:  Albuquerque, New Mexico    B. Paul Briones, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assigned to the Albuquerque Field Office. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I have been a Special Agent for 3.5 years. My experience includes, but is not limited to, conducting surveillance, debriefing suspects, interviewing witnesses, and writing affidavits for and executing search warrants. I have received training in, and have experience in, the investigation of federal firearms trafficking, money laundering, and violent crime, among other offenses, including those listed below. I have also participated in complex investigations that required the analysis of tolls, data from pen register and trap and trace devices, and cell phone location data. As a result, I am familiar with matters including, but not limited to, the means and methods used by persons and firearm trafficking organizations to purchase and transport firearms.

3. This affidavit is based on my observations and information obtained from other law enforcement sources. It does not set forth all of my knowledge related to this investigation, but only those facts necessary to establish probable cause for the requested complaint.

4. This affidavit is submitted in support of a criminal complaint charging Fernando ESPINO-Ortiz (ESPINO) and Perla Janeth RUIZ-Lozano (RUIZ) with the following violations:

   a. 18 U.S.C. § 922(o): Illegal Possession of a Machinegun;

   b. 18 U.S.C § 933(a): Firearms Trafficking and Conspiracy to Traffic Firearms;

   c. 26 U.S.C. §§ 5841, 5845(a)(8), 5845(f), 5861(d): Receipt and Possession of a Destructive Device Not Registered with the National Firearms Registration and Transfer Record; and

   d. 18 U.S.C. § 2: Aiding and Abetting.

### PROBABLE CAUSE

#### Background of Investigation

5. Between September 3 and September 25, 2024, two ATF undercover agents (UC-1 and UC-2, or collectively, the UCs) were communicating with a firearms broker who wanted to acquire grenades, other explosives, and firearms from the UCs. During the negotiations, the firearms broker initially agreed to acquire one M134 machinegun, four M249 semiautomatic rifles, and a crate of 30 grenades from the UCs for a total price of $132,000.

6.  On September 24, 2024, the broker indicated to the UCs he was having difficulty securing enough money for the purchase. As a result, the broker and the UCs renegotiated the deal. The broker ultimately agreed to acquire one M134 machinegun and three M249 semiautomatic rifles from the UCs for a total price of $110,000. The broker indicated he would be sending one or more associates to meet the UCs in Albuquerque on September 25, 2024, to purchase the weapons.

### Transaction on September 25, 2024

7.  On September 25, 2024, the UCs provided the broker with a location in Bernalillo County, in the District of New Mexico, where they would complete the weapons deal. The broker told the UCs that his associates would be arriving in a blue Dodge Durango.

8.  At approximately 3 p.m., a male, later identified as Fernando ESPINO-Ortiz (ESPINO), arrived at the meet location driving a blue Dodge Durango. Through border crossing records, agents determined the Dodge Durango had crossed from Mexico into the United States earlier that day at the Columbus Port of Entry. At the time of the border crossing, ESPINO was driving, and the passengers were Perla Janeth RUIZ-Lozano (RUIZ) and two young children.

9.  The conversations described below between the UCs, ESPINO, and RUIZ occurred in Spanish. Both UCs are fluent in Spanish and English.

10. Upon arriving to the meet location, UC-1 greeted ESPINO and offered to show ESPINO one of the M249 rifles that the UCs brought to the deal. ESPINO declined. UC-1 asked ESPINO to show UC-1 the cash for the deal. ESPINO showed UC-1 a large bag of cash on the front passenger floorboard of the Durango. UC-1 also observed movement in the rear of the vehicle, which appeared to be one or more children hiding beneath blankets, but did not see RUIZ at that time.

11. ESPINO then followed the UCs to a nearby secondary location, also in Bernalillo County, in the District of New Mexico, where the exchange of cash for weapons would take place.

12. Once at that location, ESPINO exited the Durango. RUIZ remained in the rear of the Durango. ESPINO told the UCs he brought $100,000 in cash from Mexico. ESPINO also explained that he was instructed to pick up one "mini-gun" (a slang term for the M134 machinegun) and three M249 rifles.

13. The UCs then began to show ESPINO the weapons and explained to ESPINO what they were providing. Although RUIZ remained inside the Durango, she was within earshot of the conversation as it occurred. The UCs explained that the M134 machinegun was fully automatic, meaning it was designed to expel more than one bullet with a single pull of the trigger. ESPINO picked up the M134 machinegun, wrapped the machinegun in a blanket, and loaded it into the rear of the Durango.

14. UC-1 and ESPINO also discussed grenades. UC-1 called the broker with ESPINO present and offered to provide ESPINO with a grenade as part of the deal so the broker and

ESPINO's organization could try one out and potentially buy more of them next time. ESPINO agreed to accept the sample grenade. UC-2 showed ESPINO a grenade, and ESPINO loaded it into the rear of the Durango.

15. While loading the weapons into the Durango, the UCs asked ESPINO where he was taking everything. ESPINO stated they were taking the weapons back to Mexico. ESPINO then handed the bag of cash to UC-2. ESPINO began to load the remaining weapons (the M249 rifles) into the back of the Durango.

16. As ESPINO was loading the M249 rifles, ESPINO and RUIZ were taken into custody by ATF and other law enforcement personnel.

17. While making the arrests, agents observed RUIZ holding a cell phone to her ear as if she was on a phone call. The firearms broker later contacted UC-1 expressing concern over the deal, explaining that he heard screaming on the phone after the deal, which is consistent with the broker being able to hear RUIZ at the time of the arrest. Based on my training and experience, I believe these facts are consistent with RUIZ being in contact with the firearms broker to keep him informed about the transaction.

### Post-*Miranda* Interviews

18. Following her arrest, RUIZ was advised of her *Miranda* rights and agreed to speak with agents. RUIZ confirmed the Dodge Durango was hers and that she and ESPINO crossed the U.S./Mexico border earlier that day. She also confirmed the route she and ESPINO took to Albuquerque. She stated ESPINO instructed her not to say anything during the weapons deal, although she denied knowing the purpose of the deal. She confirmed seeing the cash in the Durango and seeing the M134 machinegun being loaded into the Durango. She also admitted to being on the phone at the time of the arrest.

19. ESPINO was also advised of his *Miranda* rights and agreed to speak with agents. ESPINO admitted to agents that he was instructed to take cash to Albuquerque and bring guns back to Mexico. ESPINO claimed that he would be paid $5,000 to conduct the transaction.

### Analysis of Machinegun and Grenade

20. The M134 machinegun was previously examined by the ATF Firearms and Ammunition Technology Division (FATD). Based on that examination, and my training and experience, I know that this weapon meets the statutory definition of "machinegun" in 18 U.S.C § 921(a)(24) and 26 U.S.C § 5845(b). Based on an open-source review of information, it is my understanding that the M134 machinegun is not manufactured in the State of New Mexico, meaning it traveled in interstate commerce prior to the events described above. This is my preliminary opinion, and the final determination is pending by an ATF Firearms Interstate Nexus Expert.

21. The grenade that was loaded into RUIZ's Durango was previously examined by an ATF Certified Explosives Specialist and Bomb Technician. Based on that examination, and my

training and experience, I know that the grenade meets the statutory definition of "destructive device" in 26 U.S.C. § 5845(f), and therefore is regulated by the National Firearms Act. I also know that the grenade was not registered to ESPINO or RUIZ in the National Firearms Registration and Transfer Record at the time ESPINO and RUIZ possessed it. Based on my training and experience, I know that the grenade was manufactured, at least in part, outside of New Mexico, meaning it traveled in interstate commerce prior to the events described above.

22.     I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

## CONCLUSION

23.     Based on the foregoing, probable cause exists that on September 25, 2024, in Bernalillo County, in the District of New Mexico, ESPINO and RUIZ violated the following statutes:

   a. 18 U.S.C. § 922(o): Illegal Possession of a Machinegun;

   b. 18 U.S.C § 933(a): Firearms Trafficking and Conspiracy to Traffic Firearms;

   c. 26 U.S.C. §§ 5841, 5845(a)(8), 5845(f), 5861(d): Receipt and Possession of a Destructive Device Not Registered with the National Firearms Registration and Transfer Record; and

   d. 18 U.S.C. § 2: Aiding and Abetting.

24.     This affidavit was reviewed by AUSA Lou Mattei.

*Allison garcia*

**Allison Garcia**
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Electronically signed and sworn via telephone
this  25th day of September 2024.

*B Paul Briones*

**B. Paul Briones**
United States Magistrate Judge

4